IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Respondent*,

*v.*

RONALD BRUCE BIGGER,
*Petitioner*.

No. CR-20-0383-PR
Filed August 16, 2021

Appeal from the Superior Court in Pima County
The Honorable Nanette M. Warner, Judge
The Honorable John C. Hinderaker, Judge
The Honorable Richard D. Nichols, Judge
No. CR20043995-001
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
250 Ariz. 174 (App. 2020)
**VACATED**

COUNSEL:

Kent P. Volkmer, Pinal County Attorney, Geraldine L. Roll (argued), Deputy County Attorney, Florence, Attorneys for State of Arizona

David J. Euchner (argued), Pima County Public Defender's Office, Tucson, Attorney for Ronald Bruce Bigger

Amy Knight, Knight Law Firm PC, Tucson, Attorney for Amicus Curiae Arizona Attorneys for Criminal Justice

Timothy J. Agan, Kerri L. Chamberlin, Office of the Legal Advocate, Phoenix; Sandra L.J. Diehl, Coconino County Public Defender's Office, Flagstaff, Attorneys for Amicus Curiae Arizona Public Defender Association

Mark Brnovich, Arizona Attorney General, Nicholas Klingerman (argued), Section Chief Counsel, Lindsay St. John, Assistant Attorney General, Tucson, Attorneys for Amicus Curiae Arizona Attorney General

---

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, JUSTICES BOLICK, BEENE, and MONTGOMERY, and JUDGE SWANN joined.[*]

---

JUSTICE LOPEZ, opinion of the Court:

¶1 We consider whether (1) a defendant must present a standard of care expert affidavit to support his ineffective assistance of counsel ("IAC") claim; (2) *Perry v. New Hampshire*, 565 U.S. 228 (2012), caused a significant change in Arizona law; and (3) A.R.S. § 13-4234(G) supplements rather than conflicts with Arizona Rule of Criminal Procedure 32.4. We answer each inquiry in the negative.

## BACKGROUND

¶2 Ronald Bigger was convicted of first degree murder and conspiracy to commit first degree murder and was sentenced to concurrent prison terms of natural life. The court of appeals affirmed his convictions and sentences on March 30, 2012. On May 2, 2012, Bigger filed a motion for an extension of time for filing his notice of post-conviction relief ("PCR"), which the trial court granted. Bigger filed his notice on May 21, 2012, which was untimely. Due to multiple extensions, he did not file his PCR petition until January 2016.

¶3 In his petition, Bigger argued that he received IAC during trial, and that *Perry*—which addressed witness identification evidence—constituted a significant change in the law that would probably overturn his conviction or sentence. *See* Ariz. R. Crim. P. 32.1(g). The trial court summarily denied relief, and Bigger appealed.

---

[*] Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Peter Swann, Judge of the Arizona Court of Appeals, Division One, was designated to sit in this matter.

**¶4** The court of appeals considered the timeliness of Bigger's PCR petition, his IAC claims, and whether *Perry* caused a significant change in Arizona law. First, the court found that Bigger's PCR petition was not time barred, pursuant to Arizona Rules of Criminal Procedure 32.1(f) and 32.4, because the untimely filing of the notice of PCR was not his fault. The court so held despite § 13-4234(G), which provides that "time limits are jurisdictional" and requires dismissal of an untimely filed notice. Second, the court agreed with the trial court that Bigger had not proven his IAC claims because he "had not offered an affidavit from an expert witness to support his claims or otherwise shown that counsel's decisions, even if ultimately unsuccessful, were the result of a lack of experience or preparation." Third, the court held that *Perry* was not a significant change in the law; rather, *State v. Nottingham*, 231 Ariz. 21 (App. 2012) — a case interpreting *Perry* that required a specific, cautionary jury instruction on the reliability of an eyewitness identification even absent improper state conduct — modified Arizona law. However, Bigger's case had become final before *Nottingham* was decided, and *Nottingham* did not apply retroactively. Consequently, the court concluded that the trial court did not abuse its discretion in summarily denying relief.

**¶5** We granted review to (1) elucidate the requirements for presenting a colorable IAC claim, (2) clarify the impact of *Perry* on Arizona law, and (3) determine the constitutionality of § 13-4234(G) as it relates to untimely PCR filings. These are recurring issues of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

**¶6** We review a trial court's ruling on a PCR petition for an abuse of discretion, which occurs if the court makes an error of law or fails to adequately investigate the facts necessary to support its decision. *State v. Pandeli*, 242 Ariz. 175, 180 ¶ 4 (2017). We review legal conclusions de novo. *Id.*

3

**I.**

**¶7**        We first consider the standard a defendant must satisfy to establish a colorable IAC claim.

**A.**

**¶8**        To prevail on an IAC claim, a defendant must demonstrate that counsel's conduct fell below an objective standard of reasonableness and that he was prejudiced thereby. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *State v. Denz*, 232 Ariz. 441, 443 ¶ 6 (App. 2013). "This inquiry focuses on the 'practice and expectations of the legal community,' and asks, in light of all the circumstances, whether counsel's performance was reasonable under prevailing professional norms." *Pandeli*, 242 Ariz. at 180 ¶ 5 (quoting *Hinton v. Alabama*, 571 U.S. 263, 273 (2014)); *see also Strickland*, 466 U.S. at 687–88 (noting that more specific guidelines beyond whether counsel's representation fell below an objective standard of reasonableness are not appropriate).

**¶9**        "The relevant inquiry for determining whether the [defendant] is entitled to an evidentiary hearing is whether he has alleged facts which, if true, would *probably* have changed the verdict or sentence." *State v. Amaral*, 239 Ariz. 217, 220 ¶ 11 (2016). The claim is subject to summary dismissal "[i]f the alleged facts would not have probably changed the verdict or sentence." *Id.*; *see also Strickland*, 466 U.S. at 694 (finding that a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). If a defendant presents a colorable claim, he is entitled to a hearing to determine whether counsel rendered effective assistance. *See* Ariz. R. Crim. P. 32.13;[1] *State v. Bennett*, 213 Ariz. 562, 568 ¶ 30 (2006).

**¶10**        "A defendant's lawyers are not deficient merely for making errors." *State v. Miller*, 251 Ariz. 99, 102 ¶ 10 (2021). "Representation falls below the 'prevailing professional norms' of the legal community if counsel's performance was unreasonable under the circumstances." *Id.* (quoting *Hinton*, 571 U.S. at 273). Often, the deficiency inquiry will focus on counsel's defense strategy. We presume counsel acted properly unless

---

[1] Absent material revisions since the events in question, we cite the current versions of statutes unless otherwise indicated.

a defendant can show that "counsel's decision was not a tactical one but, rather, revealed ineptitude, inexperience or lack of preparation." *State v. Goswick*, 142 Ariz. 582, 586 (1984); *see also State v. Valdez*, 167 Ariz. 328, 329–30 (1991) (noting that a strong presumption exists that defense counsel provided effective assistance).

¶11        When evaluating the reasonableness of counsel's strategic decisions, the foundational inquiry is the rationale for the decision. *See generally, e.g.*, *Pandeli*, 242 Ariz. at 181–91 ¶¶ 9–68 (evaluating the reasoning behind counsel's decisions); *Goswick*, 142 Ariz. at 586 (considering, for example, that "[t]here are a number of reasons why an attorney may choose not to call a witness"); *Strickland*, 466 U.S. at 689 (noting that decisions must be evaluated from counsel's perspective at the time). The scrutiny of counsel's performance must be highly deferential and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

¶12        Notably, "[m]atters of trial strategy and tactics are committed to defense counsel's judgment" and generally cannot serve as the basis for an IAC claim. *State v. Beaty*, 158 Ariz. 232, 250 (1988); *see also Pandeli*, 242 Ariz. at 181 ¶ 8 ("Simply disagreeing with strategy decisions cannot support a determination that representation was inadequate."); *Strickland*, 466 U.S. at 690. However, tactical or strategic decisions by trial counsel are not incontrovertibly beyond a court's review. *See, e.g.*, *State v. Gerlaugh*, 144 Ariz. 449, 455 (1985) (reasoning that "[d]isagreements in trial strategy will not support a claim of ineffective assistance *so long as* the challenged conduct has some reasoned basis" (emphasis added)); *Pandeli*, 242 Ariz. at 183 ¶ 21 (rejecting IAC claim based on failure to cross-examine because it "was a strategic decision that defendant has not demonstrated falls below the level expected of a reasonably competent defense attorney"); *Strickland*, 466 U.S. at 681 (listing relevant factors courts may consider in deciding whether certain strategic choices were reasonable, including "the experience of the attorney, the inconsistency of unpursued and pursued lines of defense, and the potential for prejudice from taking an unpursued line of defense").

¶13        Bigger argues that the trial court and court of appeals imposed a requirement for a standard of care expert affidavit to sustain his IAC claim. We disagree. The court of appeals' opinion expressly refutes Bigger's contention:

Bigger had not shown counsel's decisions *were other than tactical or that* [*counsel's*] *performance had fallen below prevailing professional norms . . .* [and] Bigger had not offered "an affidavit from an expert witness" to support his claims *or otherwise shown* that counsel's decisions, even if ultimately unsuccessful, were the result of a lack of experience or preparation.

*State v. Bigger*, 250 Ariz. 174, 182 ¶ 22 (App. 2020) (emphasis added).

**¶14**      The court of appeals correctly recognized that this Court has adopted the objective reasonableness standard for deficient performance and explained that courts can "consult various sources to decide whether counsel's actions were reasonable considering the circumstances." *Id.* ¶ 23 (quoting *State v. Nash*, 143 Ariz. 392, 397 (1985)).  Of note, we observed that trial judges conducting Rule 32 hearings *may* consider expert testimony, but cautioned that guidelines as to what is reasonable—such as American Bar Association standards—do not prescribe rules that counsel *must* follow, as "[a]ny such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Nash*, 143 Ariz. at 398 (quoting *Strickland*, 466 U.S. at 689).  But we also clarified that a reasonableness determination can be made without reference to any external authority and without an evidentiary hearing, as trial judges will ordinarily possess the expertise necessary to make such a determination. *See id.*; *Strickland*, 466 U.S. at 688–89, 699–700.  Consequently, while a defendant may present an expert affidavit, it is not required.

**¶15**      Here, the court of appeals correctly articulated the law when it explicitly noted the absence of an expert affidavit requirement: "[A]lthough *an affidavit may not always be required* to establish that counsel's performance did not meet prevailing professional standards, a defendant must do more than disagree with, or posit alternatives to, counsel's decisions to overcome the presumption of proper action." *Bigger*, 250 Ariz. at 182 ¶ 23 (emphasis added).

**B.**

¶16	We next apply the standard for a colorable IAC claim to the trial court's ruling dismissing Bigger's IAC claims. We agree with the court of appeals' conclusion that there is no evidence that counsel's representation in this case fell below objectively reasonable standards. For the following reasons, unlike in cases such as *State v. Vickers*, 180 Ariz. 521, 526–27 (1994)—in which counsel's preparation for trial was haphazard and the record devoid of any logical basis for counsel's decisions—we conclude that the court did not abuse its discretion in dismissing Bigger's claims.

¶17	First, Bigger alleges that trial counsel was ineffective "by putting forth a theory of the case that was unfounded and completely contradicted by the evidence" when she argued that Bigger's co-defendant Bradley Schwartz killed the victim rather than present a viable third-party culpability theory. On this point, the trial court observed: "The available evidence shows that trial counsel conducted a proper investigation prior to settling on a trial strategy. She investigated and litigated over alternative theories before abandoning them. Ultimately, counsel's trial strategy was reasonable at the time she made her decisions and considering the options available to her." We agree. Although blaming Schwartz for the murder may not have been a winning strategy, counsel investigated alternatives, and her decision was not objectively unreasonable. *See, e.g.*, *Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .").

¶18	Second, Bigger contends that trial counsel was ineffective "by stipulating with the prosecution to make no hearsay objections to any Schwartz statements that either party wished to introduce." The trial court—in evaluating four statements that Bigger argues would have been precluded—demonstrated that the statements would have, in fact, been admissible and were otherwise consistent with trial counsel's strategy, which the court refrained from second-guessing. *See, e.g.*, *Pandeli*, 242 Ariz. at 181 ¶ 8 (rejecting trial court's method of "repeatedly second-guessing counsel's strategy decisions"). We agree. Stipulating to the admission of certain hearsay evidence was a tactical decision that Bigger failed to demonstrate fell below the level expected of a reasonably competent defense attorney. *See, e.g.*, *Goswick*, 142 Ariz. at 586 (finding no IAC if counsel's decision had a reasoned basis and was not the result of "ineptitude, inexperience or lack of preparation").

¶**19**　　　　Third, Bigger argues that trial counsel was ineffective "by rescinding a character defense when the prosecution disclosed evidence that would not have been admitted" and by failing to "rel[y] on the character trait of 'valuing human life'" rather than "non-violence." But, as the trial court reasoned, defense counsel investigated and disclosed witnesses for a character defense and withdrew the defense only after concluding that rebuttal evidence disclosed by the State undermined it; counsel focused, instead, on another witness's time-of-death testimony because it would better bolster Bigger's alibi. In sum, counsel weighed the character trait evidence's strengths and weaknesses and proceeded accordingly. We therefore agree that counsel's decision to forego the character defense was not unreasonable. *See, e.g.*, *Pandeli*, 242 Ariz. at 183 ¶ 16 ("Although defense counsel, in hindsight, may have 'dropped the ball' by not calling [a specific witness] . . . that mistake did not constitute IAC . . . ."). Further, we find no authority to support the proposition that "valuing human life" is an admissible character trait. Consequently, counsel's tactical decisions were not unreasonable.

¶**20**　　　　Fourth, Bigger asserts that trial counsel was ineffective "by making claims during opening statements that could only have been testified to by [Bigger], knowing that [Bigger] would not be testifying." The trial court determined that two of the three challenged claims could have been testified to by other witnesses. Regarding the third challenged claim of alleged inconsistency between counsel's opening statement and a witness's testimony, the trial court underscored that counsel's decisions were uniform with her trial strategy—given the theory of the case that Schwartz was the murderer—and her "adherence to a theory is more indicative of consistency and tenacity than deficient performance." Moreover, the court considered that, even if trial counsel was deficient for underdelivering on claims made during opening statements, Bigger failed to establish that he suffered prejudice in the face of the totality of the evidence. *See Strickland*, 466 U.S. at 694–95. Indeed, he conceded that trial counsel made "no explicit promise[s]" in her opening statement and that she presented a "solid alibi witness." Finally, the jury was properly instructed about the non-evidentiary value of opening statements. Accordingly, we agree with the trial court that Bigger failed under both *Strickland* prongs to present a colorable claim warranting an evidentiary hearing. *See, e.g.*, *Pandeli*, 242 Ariz. at 183 ¶ 21 (noting that "[n]o finding

was made that the decision lacked 'some reasoned basis,' and the evidence would not support such a finding").

¶21      Fifth, Bigger claims that counsel was ineffective "for calling Dr. Keen, where Keen's testimony was not as promised in opening statement and did not support the defense theory that Schwartz was the real killer." Yet this decision was another tactical choice that did not constitute IAC because Dr. Keen's testimony regarding an 8:30 p.m. time-of-death served to exonerate Bigger, as witness testimony placed him across town at 8:19 p.m. And, although Dr. Keen's characterizations about wounds on the victim and Bigger were potentially damaging to the defense, counsel investigated the evidence, thoroughly questioned Dr. Keen, and elicited beneficial testimony consistent with the theory of the case. We concur in the trial court's conclusion that counsel's decision was reasonable. *See, e.g.*, *id.* at 182–83 ¶¶ 15–16 (reasoning that counsel's decisions were "the product of a reasoned (even if mistaken) strategic judgment" and did not constitute IAC).

¶22      The record is devoid of any evidence that defense counsel was unprepared or acted unreasonably in representing Bigger. As discussed, when assessing the reasonableness of strategic decisions, courts may consider any information that informs the analysis—including an expert opinion. However, courts may not simply substitute their after-the-fact judgment for counsel's during trial. *See, e.g.*, *id.* at 181 ¶ 8; *Miller*, 251 Ariz. at 103 ¶ 12 (disagreeing with trial court that defendant proved counsel was ineffective by merely pointing to an error in the jury instruction that was given). Here, even if counsel's tactical decisions were erroneous, none constituted IAC. The trial court therefore did not abuse its discretion in ruling that Bigger failed to present colorable IAC claims.

## II.

¶23      We next consider whether *Perry* caused a significant change in Arizona law. It did not.

¶24      The State relied, in part, on an eyewitness identification to prove Bigger's guilt. At the time of trial, the relevant jury instruction—which lists the factors a jury may consider in determining whether an in-court identification is reliable—could only be given if the defendant proved to the trial court that a potentially faulty identification was due to

suggestive police procedures, *see State v. Dessureault*, 104 Ariz. 380, 384 (1969); *State v. Osorio*, 187 Ariz. 579, 582 (App. 1996), which Bigger failed to do. After his trial, *Perry* and *Nottingham*—both of which dealt with similar jury instructions—were decided.

**¶25**     Bigger argues that *Perry* entitles him to relief because it caused a significant change in the law. The trial court determined that Bigger was, in fact, seeking relief in reliance on *Nottingham*, but found that, because his case had become final before *Nottingham* was decided, and because *Nottingham* did not apply retroactively, relief was unwarranted. The court of appeals agreed with the trial court. We, however, conclude that *Perry* did not constitute a significant change in Arizona law and hold that *Nottingham* was incorrectly decided insofar as it suggests otherwise.

**¶26**     In *Perry*, the Supreme Court considered "whether the Due Process Clause requires a trial judge to conduct a preliminary assessment of the reliability of an eyewitness identification made under suggestive circumstances not arranged by the police." 565 U.S. at 236. Perry asserted that, based on rationales underlying the Court's prior decisions, trial judges were required to prescreen eyewitness evidence for reliability *any time* an identification was made under suggestive circumstances. *Id.* at 240. The Court disagreed, reasoning that "[t]he fallibility of eyewitness evidence does not, *without the taint of improper state conduct*, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Id.* at 245 (emphasis added). The Court therefore was unwilling to enlarge the domain of due process, and instead acknowledged the existence of "other safeguards built into our adversary system that caution juries against placing undue weight on eyewitness testimony of questionable reliability," including vigorous cross-examination, protective rules of evidence, and "[e]yewitness-specific jury instructions, which many federal and state courts have adopted, . . . [that] warn the jury to take care in appraising identification evidence." *Id.* at 233, 245–46.

**¶27**     The court of appeals in *Nottingham* concluded that *Perry* modified Arizona law, stating:

> By its reasoning, the [*Perry*] Court clearly assumed that trial courts would provide cautionary instructions, alerting the jury to the dangers of identification evidence secured through

10

a suggestive procedure, even when the suggestive pretrial identification was not due to "improper state conduct" and therefore was not subject to any judicial pretrial screening to comply with due process.

*Nottingham*, 231 Ariz. at 26 ¶ 12. *But see Perry*, 565 U.S. at 248 ("[T]he [federal] Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement."). *Nottingham* further reasoned that *Perry* suggested a cautionary jury instruction is required when a defendant has presented evidence that a pretrial identification has been made under suggestive circumstances. *Nottingham*, 231 Ariz. at 26 ¶ 13. We reject *Nottingham*'s characterization of *Perry*'s holding.

¶28 A significant change in the law pursuant to Arizona Rule of Criminal Procedure 32.1(g) "requires some transformative event, a clear break from the past." *State v. Shrum*, 220 Ariz. 115, 118 ¶ 15 (2009) (quoting *State v. Slemmer*, 170 Ariz. 174, 182 (1991)) (internal quotation marks omitted). To determine when a "clear break from the past" has occurred, "we must consider both that decision and the law that existed" at the time a criminal defendant was sentenced. *State v. Valencia*, 241 Ariz. 206, 208 ¶ 9 (2016) (internal citation omitted). And, "[t]he archetype of such a change occurs when an appellate court overrules previously binding case law." *Shrum*, 220 Ariz. at 118 ¶ 16. *Perry* does not satisfy these criteria.

¶29 As discussed, *Perry* held that:

> When no improper law enforcement activity is involved, . . . it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.

565 U.S. at 233. *Perry*'s references to jury instructions underscore, but do not mandate, the utility of cautionary jury instructions—with or without the presence of unduly suggestive police procedures—as one of the

11

safeguards built into the adversarial system relative to eyewitness testimony of questionable reliability. *Id.* at 245. "Finding no convincing reason to alter [its] precedent," the Court concluded that a preliminary judicial inquiry is not required when the identification is not procured under unnecessarily suggestive circumstances arranged by law enforcement. *Id.* at 248. Consequently, *Perry* affirmed the Supreme Court's jurisprudence and did not clearly break from the past.

¶30        *Nottingham* took *Perry*'s narrow holding—that is, no judicial inquiry is required when the identification was not procured under suggestive circumstances involving police—and transformed it into a broader mandate requiring a preliminary jury instruction when the identification was procured under suggestive circumstances, or otherwise upon request. This stretches *Perry* too far. We therefore reject *Nottingham* insofar as it suggested that *Perry* effected a change in Arizona law.

¶31        We also briefly note that neither *Perry* nor *Nottingham* would have required reversal of Bigger's conviction or sentence. *See, e.g.*, Ariz. R. Crim. P. 32.1(g) (providing exception to rule that defendant cannot seek collateral review of a matter he could have raised during his direct appeal, when there is a significant change in the law which, if applicable to his case, would probably overturn the defendant's conviction or sentence). Given the numerous other safeguards employed in this case—including a *Dessureault* hearing, cross-examination, and a blind expert who explained to the jury the perceived unreliability of eyewitness identifications—the fact that Bigger did not receive his requested jury instruction would not have altered the outcome of his case.

## III.

¶32        We now consider whether § 13-4234(G) unconstitutionally infringes this Court's rulemaking authority.

¶33        The parties do not dispute, and the court of appeals agreed, that Bigger's untimely PCR filing was not his fault because he was represented by counsel at that time. Bigger argues that § 13-4234(G) unconstitutionally conflicts with the procedure established by this Court in Rule 32.4. We agree.

¶34     Under the Arizona Rules of Criminal Procedure, trial courts "must excuse an untimely notice . . . if the defendant adequately explains why the failure to timely file a notice was not the defendant's fault." Ariz. R. Crim. P. 32.4(b)(3)(D). Conversely, § 13-4234 prescribes the same thirty- and ninety-day time limits set forth in Rule 32.4(b)(3)(A), but the statute provides that "the time limits are jurisdictional, and an untimely filed notice or petition shall be dismissed with prejudice." § 13-4234(G). Consequently, unlike the rule, the statute does not excuse the untimely filing of a PCR notice when the defendant is not at fault.

¶35     The Arizona Constitution allocates to this Court the "[p]ower to make rules relative to all procedural matters in any court." Ariz. Const. art. VI, § 5(5). The legislature may not enact a statute that conflicts with our rulemaking authority. *See State v. Reed*, 248 Ariz. 72, 76 ¶ 9 (2020). However, courts will "recognize 'reasonable and workable' procedural laws [passed by the legislature] if they supplement rather than conflict with court procedures." *Id.* ¶ 10 (quoting *Seisinger v. Siebel*, 220 Ariz. 85, 89 ¶ 8 (2009)). If there is a conflict, courts must determine whether the challenged statutory provision is substantive or procedural. *See id.* ¶ 11. If a rule creates or takes away a vested right—such as the right to appeal—it is substantive; but if it operates as a means of implementing an existing right, the rule is procedural. *State v. Fowler*, 156 Ariz. 408, 411 (App. 1987).

¶36     Under similar circumstances, we have held comparable statutes to be procedural and unconstitutional when they conflicted with this Court's rules. For example, in *State ex rel. Napolitano v. Brown*, we considered whether the legislature violated the separation of powers doctrine when it adopted a statute that set time limits for filing PCR petitions that conflicted with those in Rule 32.4(c). 194 Ariz. 340, 341 ¶ 1 (1999). We held that the statute's lowering of the time limits for filing PCR petitions directly conflicted with the rule, thus violating this Court's exclusive constitutional rulemaking authority. *Id.* at 342 ¶ 7. Similarly, in *Fowler*, the court of appeals held that provisions of § 13-4232 and § 13-4234 unconstitutionally infringed on this Court's rulemaking authority, as the statutory one-year time limit applicable to filing PCR petitions conflicted with the limits in Rule 32. 156 Ariz. at 413–14.[2] There, the court of appeals correctly recognized that, although the right to post-conviction relief is

---

[2] This Court approved the decision in *Fowler* in *State v. Bejarano*, 158 Ariz. 253, 254 (1988).

substantive, the time limits involved are purely procedural, as they implement the right to post-conviction relief. *Id.* at 411. These cases guide our reasoning.

¶37 "We will recognize 'statutory arrangements which seem reasonable and workable' and which supplement the rules we have promulgated. However, when a conflict arises, or a statutory rule tends to engulf a general rule of admissibility, we must draw the line." *State ex rel. Collins v. Seidel*, 142 Ariz. 587, 591 (1984) (quoting *Alexander v. Delgado*, 507 P.2d 778, 779 ¶ 8 (N.M. 1973)). Here, § 13-4234 prescribes the same thirty- and ninety-day time limits set forth in Rule 32. Rule 32.4, however, allows trial courts to hear untimely petitions when the delay is not attributable to the defendant, whereas the statute purports to withdraw a court's power to do so by depriving it of jurisdiction. By eliminating the "no fault" exception to time limits, § 13-4234(G) curtails the constitutional right to appeal for IAC claims, and directly conflicts with Rule 32.4. Accordingly, we hold the statutory subsection unconstitutional as applied here because it conflicts with Rule 32.4's "no fault" exception to PCR filing time limits. *See, e.g.*, *Dahnke-Walker Milling Co. v. Bondurant*, 257 U.S. 282, 289 (1921) ("A statute may be invalid as applied to one state of facts and yet valid as applied to another."); *Korwin v. Cotton*, 234 Ariz. 549, 559 ¶ 32 (App. 2014) ("An 'as-applied' challenge assumes the standard is otherwise constitutionally valid and enforceable, but argues it has been applied in an unconstitutional manner to a particular party.").

**CONCLUSION**

¶38 For the reasons set forth, we vacate the court of appeals' opinion and affirm the trial court's ruling dismissing Bigger's PCR petition.