NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent,*

*v.*

CRAIG DANIEL MOORE, *Petitioner.*

No. 1 CA-CR 23-0570 PRPC

FILED 04-10-2025

Petition for Review from the Superior Court in Mohave County
No. S8015CR201800254
The Honorable Billy K. Sipe, Judge *Pro Tempore*

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Mohave County Attorney's Office, Kingman
By Jacob Cote
*Counsel for Respondent*

Craig Daniel Moore, Florence
*Petitioner Pro Se*

---

## MEMORANDUM DECISION

Presiding Judge Anni Hill Foster delivered the decision of the Court, in which Judge Michael J. Brown and Judge Paul J. McMurdie joined.

---

**F O S T E R**, Judge:

**¶1**　　　　Defendant Craig Daniel Moore petitions this Court for review of the superior court's order finding no "colorable claim for post-conviction relief" for violation of his right to a fair trial under the U.S. and Arizona Constitutions based on ineffective assistance of counsel and newly discovered evidence. For the following reasons, this Court grants review but denies relief.

### FACTS AND PROCEDURAL HISTORY

**¶2**　　　　This Court's prior memorandum decision sets forth the facts of this case. *State v. Moore*, 1 CA-CR 19-0599, 2020 WL 6578365, at * 1, ¶¶ 2–5 (Ariz. App. Nov. 10, 2020) (mem. decision). As relevant here, the charges against Moore were based on his daughter's ("Betsy")[1] claims that Moore sexually assaulted and abused her on multiple occasions between 2005 and 2012, beginning when she was ten years old.

**¶3**　　　　The premise of the defense's theory of the case was "that the victim knowingly lied about sexual abuses" against Moore and other individuals. Leading up to trial, Moore's counsel ("Counsel") discussed with Moore the decision not to conduct pre-trial interviews for strategic purposes. Counsel also discussed potentially using an expert witness to testify about false memory syndrome, which Counsel determined would not be relevant to the defense's theory. Moore discussed his medical condition with Counsel. Specifically, Moore claimed that being a double amputee made it physically impossible for him to commit the crimes charged. Counsel did not provide this evidence at trial.

---

[1] This Court uses a pseudonym to protect the identity of the victim. *See State v. Agueda*, 253 Ariz. 388, 389, ¶ 2 n.1 (2022); Ariz. R. Sup. Ct. 111(i).

¶4        Over the course of a multi-day jury trial, Counsel elicited testimony from several witnesses challenging the veracity of Betsy's claims, including testimony that Betsy had falsely accused a teacher of touching her inappropriately and testimony from an investigator involved in that allegation. During Betsy's cross-examination, Counsel questioned Betsy about her false allegations against Moore and other individuals. But Betsy could not remember the course of events, and Counsel did not develop the issue further. Consequently, "the State objected to large portions of the evidence" Counsel intended to present. During the defense's case-in-chief, Counsel planned to call Moore's probation officer to the stand, but ultimately dismissed the probation officer upon discovering the testimony would not corroborate the defense's theory of the case.

¶5        The jury found Moore guilty on all eight counts. The court sentenced Moore to a minimum of 100.5 years and credited 515 days presentence incarceration. Moore petitioned the superior court for post-conviction relief, claiming ineffective assistance of counsel and newly discovered evidence. The court denied relief, finding he presented no colorable claim regarding either issue.

¶6        This Court has jurisdiction under A.R.S. § 13-4239(C).

## DISCUSSION

¶7        On review, Moore argues the superior court erred in ruling he failed to establish a colorable claim of (1) ineffective assistance of counsel and (2) newly discovered evidence.

¶8        This Court reviews a dismissal of a petition for post-conviction relief for an abuse of discretion. *State v. Bennett*, 213 Ariz. 562, 566, ¶ 17 (2006). An abuse of discretion occurs when "the court makes an error of law or fails to adequately investigate the facts necessary to support its decision." *State v. Bigger*, 251 Ariz. 402, 407, ¶ 6 (2021). The petitioner bears the burden of demonstrating the superior court erred in denying the petition for post-conviction relief. *State v. Reed*, 252 Ariz. 236, 238, ¶ 6 (App. 2021). Since this Court did not receive trial transcripts in this case, it therefore assumes such transcripts support the superior court's decisions. *See Bliss v. Treece*, 134 Ariz. 516, 519 (1983) (assuming evidence not included in the record supported the court's findings when the record was incomplete).

## I.       Ineffective Assistance of Counsel.

**¶9**       Moore argues six instances of ineffective assistance of counsel. He contends Counsel failed to (1) adequately prepare for trial; (2) conduct pre-trial interviews; (3) prepare him for trial; (4) utilize an expert witness for false memory syndrome; (5) call his former probation officer as a witness; and (6) properly cross-examine witnesses.

**¶10**       A defendant establishes a colorable claim of ineffective assistance of counsel when the defendant shows (1) "counsel's performance fell below objectively reasonable standards and" (2) "this deficiency prejudiced the defendant." *Bennett*, 213 Ariz. at 567, ¶ 21 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A court determines counsel's conduct through "the practice and expectations of the legal community and asks, in light of all the circumstances, whether counsel's performance was reasonable under prevailing professional norms." *Bigger*, 251 Ariz. at 407, ¶ 8 (quoting *State v. Pandeli*, 242 Ariz. 175, 180, ¶ 5 (2017)). Under the prejudice requirement, the defendant shows there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [such that it is] sufficient to undermine confidence in the outcome." *Bennett*, 213 Ariz. at 568, ¶ 25 (quotation omitted). If a defendant presents a colorable claim, the defendant is allowed an evidentiary hearing "on the merits of that claim." *Id.* at ¶ 30; *see also State v. Watton*, 164 Ariz. 323, 328 (1990); Ariz. R. Crim. P. 32.13(a).

### A.  Failure to adequately prepare for trial.

**¶11**       First, Moore argues Counsel was ineffective due to inexperience. Moore points to Counsel's limited experience, having only practiced law for less than four years and Counsel having not tried a sex-crime case before.

**¶12**       The superior court found that "mere inexperience is not sufficient to establish ineffective assistance of counsel." The court reasoned that because it evaluates performance rather than experience, the court found Counsel "presented a reasonable defense" including "adequate" opening statement and closing argument and "properly and effectively question[ing]" trial witnesses. *See U.S. v. Chronic*, 466 U.S. 648, 665 (1984) (a lawyer's inexperience can provide insight into performance, but it is not by itself a reason for ineffectiveness). The court did not err in finding no colorable claim for relief.

### B.  Failure to conduct pre-trial interviews.

¶13 Second, Moore asserts Counsel failed to conduct pre-trial interviews. Failure to conduct pretrial interviews of the State's witnesses can constitute ineffective assistance of counsel. *See State v. Radjenovich*, 138 Ariz. 270, 274 (App. 1983) ("[I]t offends basic notions of minimal competence of representation for defense counsel to fail to interview any state witnesses prior to a major felony trial."). But failure to do so can also be harmless. *See id.* at 275.

¶14 Counsel's written declaration provided that Counsel investigated Betsy's claims, and witness interviews as to those claims were then transcribed. Counsel claimed the "interviews covered all topics [he] would have raised during a pre-trial interview" but chose not to conduct the hearings himself as a strategy in not "tipping [his] hand" to the State. The court also considered that evidence needed for Moore's defense stemmed from Betsy herself, who "denied a pre-trial interview which she had the right to do." *See* Ariz. Const. art. 2, § 2.1(A)(5); *see also State v. Roscoe*, 185 Ariz. 68, 70 (1996) (the Victims' Bill of Rights provides victims with various constitutional rights, including the right to refuse an interview by defendant's attorney).

¶15 The court acknowledged that despite Counsel's strategy not to conduct pre-trial interviews, Counsel's cross-examination resulted in effective questioning. Since Moore could not prove what additional information Counsel would have discovered through pre-trial interviews, the superior court did not err.

## C.  Failure to prepare Moore for trial.

¶16 Third, Moore alleges Counsel "never fully prepared [him] for trial." He reasons that when he asked Counsel about the types of questions the State would ask, Counsel's response was "just the standard questions." But, Moore fails to establish what further preparation was required or how it would have impacted the case.

¶17 The court found that there were no instances in which Counsel's performance at trial was a result of inexperience or unpreparedness. This Court sees no error.

## D.  Failure to utilize an expert witness for false memory syndrome.

¶18 Fourth, Moore contends Counsel failed to use an expert witness to present "medical and psychological information" regarding Betsy to a jury to prove false memory syndrome. Counsel explained to the

court in a written declaration that the defense's theory at trial was to show "the victim knowingly lied about sexual abuses involving Mr. Moore and others to avoid uncomfortable situations."

**¶19** But disagreements in strategy are not sufficient to find representation inadequate. *See Pandeli*, 242 Ariz. at 181, ¶ 8. This is especially true when counsel has adequately investigated potential defenses and reasonably believed such a defense is unnecessary to trial strategy. *See Bigger*, 251 Ariz. at 409, ¶ 17 (counsel was not objectively unreasonable when alternative theories were investigated); *see also State v. Denz*, 232 Ariz. 441, 445, ¶ 12 (App. 2013). The choice not to consult with an expert may be deemed a valid trial strategy only if counsel has a reasoned justification for the decision. *See Denz*, 232 Ariz. at 445–46, ¶¶ 12–13 ("[T]he decision not to consult with an expert may qualify as sound trial strategy only if counsel had a reasoned basis justifying the decision.").

**¶20** The court found that Counsel's justification for not using an expert witness was reasonable and justified the decision. The defense's theory relied on instances where Betsy had reportedly lied about sexual abuses including (1) against a teacher when Betsy did not like school; (2) against Moore when Betsy did not want to live with him (which she later recanted); (3) against Moore when Betsy wanted to fit in at church; and (4) against Moore when Betsy attended massage therapy school and did not want to undress as was required. Counsel reasoned that because the defense's theory was to show how Betsy "knowingly lied," the use of an expert witness for false memory "would have been incongruent with the defense's theory." The court found an expert on false memory would have been inconsistent with the defense's theory, and as a result, concluded Moore failed to show how an expert witness would have further supported his defense. The court did not abuse its discretion with its findings on this issue.

### E. Failure to call Moore's former probation officer as a witness.

**¶21** Fifth, Moore argues that at trial, Counsel informed the jury that defense could call Moore's probation officer as a witness. Moore's defense included "that he was living in the living-room area" at the time of the first alleged incident and that his probation officer would have corroborated his defense. But at trial, Counsel never called the probation officer. Moore highlighted that Counsel's failure to call the probation officer as to a critical point of his defense was highly prejudicial.

¶22        In his declaration, Counsel acknowledged the "where" of the incident was an important fact in the case but decided not to call the probation officer after he inquired about what the officer would say. Counsel stated he learned the probation officer would testify that "Moore was living in the garage at the time of the first alleged incident." Because Counsel discovered the probation officer's testimony would not corroborate Moore's defense, Counsel discussed with "Moore that there was no benefit to putting [the probation officer] on the stand."

¶23        The court found that Counsel's decision not to call the probation officer at trial was not ineffective assistance of counsel because (1) "there was no strategic benefit to call a witness who would not support the defendant's theory" and (2) "establishing that the defendant did not live in the garage d[id] not prove that he did not sexually abuse [Betsy]." Disagreements in trial strategy will not justify a claim of ineffective assistance of counsel if the challenged conduct was based on a reasonable rationale. *See State v. Vickers*, 180 Ariz. 521, 526 (1994). The decision to call a witness typically falls within the counsel's discretion for trial strategy. *See State v. Mata*, 185 Ariz. 319, 335 (1996). The court did not err in its findings.

### F.  Failure to properly cross-examine witnesses.

¶24        Lastly, Moore claims Counsel was ineffective in cross-examining the State's four witnesses. During cross-examination of Betsy, Moore points out instances where Counsel inadequately impeached Betsy, including (1) when "Counsel failed to inquire as to why she could remember [Moore] assaulting her at the age of ten, but couldn't accurately recall lying to police about assaulting her at the age of nine"; (2) when she testified "I've told this story so many times it's like it's part of me now, it's like it's real. Maybe I made it up. Maybe it didn't happen"; and (3) when she presented an opportunity to discuss her prior false allegations. Counsel admitted this error in his written declaration. He suggested that despite his failure to confront Betsy regarding her failed memory, and his attempt to work around the issue, such "presentation did not have the effect on the jury" as he intended.

¶25        In considering Moore's claims, the court found Counsel impeached those statements. The court determined that impeaching Betsy with prior inconsistent statements positioned the State "to meaningful adversarial testing" and that Counsel sufficiently highlighted Betsy's lack of credibility in his closing argument. Additionally, the court found that Counsel "present[ed] sufficient evidence" as to the falsity of Betsy's claims against a teacher who was alleged to have inappropriately touched her. The

court recognized that in defense's case-in-chief Counsel had the teacher testify regarding the false allegations. Additionally, Counsel had an investigator's testimony about his involvement in the teacher's allegation read to the jury. The court concluded that although not perfect, Counsel presented circumstantial evidence for the jury.

¶26 Moore also contends Counsel failed to properly cross-examine Betsy's grandmother. Moore claims Counsel should have presented a statement about grandmother kicking him out of the house because of an alleged theft. The court found such a statement had "very little, if any, value" to the case.

¶27 While Counsel did admit error to parts of the cross-examination, the error was not such that the outcome would have been different. *See Pandeli*, 242 Ariz. at 181–82, ¶¶ 9–12 (even though counsel admitted the failure in cross-examining expert witness, the court found the incident did not prove ineffective assistance of counsel when considering the entire record). The court considered Counsel's questioning and found that the Counsel's presentation of circumstantial evidence was sufficient to establish the defense's theory of the case and did not fall "below an objective standard of reasonableness." *See Bigger*, 251 Ariz. at 408, ¶ 14 (a trial judge has the "expertise necessary" for a "reasonableness determination" of a counsel's performance). The court did not err in finding that Moore failed to establish a colorable claim for relief.

¶28 As a last attempt to argue ineffective assistance of counsel, Moore asks this Court to consider that, if it finds no single error amounting to his ineffective assistance of counsel claim, "it is appropriate for this Court to consider the cumulative effects of all the errors." While multiple non-prejudicial actions, may together suggest ineffective assistance of counsel by the defendant, it is not applicable when all actions were within the required competence. *See Pandeli*, 242 Ariz. at 192, ¶ 71 (while hindsight may expose alternative decisions for trial counsel to make, there is no cumulative error when no decisions were made with "reason or strategy and were not shown to be the product of ineptitude, inexperience, or lack of preparation"). Absent failure "to adequately investigate the facts necessary to support its decision," the superior court did not err in denying Moore's convictions. *Bigger*, 251 Ariz. at 407, ¶ 6. The court did not abuse its discretion in dismissing Moore's claims as there is no evidence indicating Counsel's representation fell below objectively reasonable standards.

## II. Newly Discovered Evidence.

**¶29**      Moore next claims there were three forms of newly discovered evidence in his case. First, that Betsy's counselor would testify that Betsy never revealed any sexual abuse during counseling. Second, testimony from three individuals whom Moore had sexual relations with would testify that he did not commit the acts charged. Lastly, testimony from various medical doctors would testify how his medical condition as a double amputee would have made it "impossible for [him] to have committed these crimes."

**¶30**      To receive post-conviction relief based on newly discovered evidence, the defendant must show the material evidence exists such that (1) the evidence was found after the trial; (2) "[t]he defendant exercised due diligence in" obtaining evidence; and (3) the evidence is not for cumulative or impeachment purposes unless the impeachment evidence significantly undermines critical testimony making it likely to alter the verdict or sentence. *State v. Amaral*, 239 Ariz. 217, 219, ¶ 9 (2016); Ariz. R. Crim. P. 32.1(e). The defendant is "entitled to an evidentiary hearing regarding a claim of newly discovered evidence if [he] presents a 'colorable claim.'" *Amaral*, 239 Ariz. at 219, ¶ 9. A defendant has a colorable claim if he proves (1) the evidence is newly discovered; (2) the alleged facts support due diligence; (3) the evidence is neither cumulative nor impeaching; (4) the evidence is material; and (5) the evidence would likely alter the verdict if the court ordered a new trial. *State v. Serna*, 167 Ariz. 373, 374 (1991); *see also* Ariz. R. Crim. P. 32.1(e).

**¶31**      Moore does not illustrate how the court's consideration of the newly discovered evidence would change his conviction. Because it is the court's responsibility to consider "the probability that such [newly discovered] facts, if introduced, would have changed the verdict, a court's assessment of evidence is discretionary. *Amaral*, 239 Ariz. at 220, ¶ 11 (a court should consider whether the "facts which, if true, would *probably* have changed the verdict or sentence" to hold an evidentiary hearing); *see also* Ariz. R. Crim. P. 32.1(e); *Serna*, 167 Ariz. at 375.

**¶32**      Here, the court found Moore "failed to state any colorable claim" that "would be sufficient to establish that no reasonable fact-finder would find [Moore] guilty of the offense beyond a reasonable doubt." Despite Moore's contention that the counselor should have testified, that testimony, as the court reasoned, would have been "cumulative." Because Betsy did not report the abuse until 2015 and "much of the abuse occurred after 2006," testimony from the counselor regarding sessions occurring

between "2005-2006 would not have changed the outcome, especially since much of the abuse had not yet occurred." The court did not address the three individuals whom Moore had sexual relations with. As to Moore's medical condition, the court points out Moore did testify to his medical condition but did not testify to his condition at "the time period of the sexual abuse and has not presented any evidence that any doctors would testify he was in poor health during the time period." Even so, the court found testimony of Moore's condition "would not have been beneficial" because as Counsel stated, Moore's amputations occurred well after the alleged conduct in this case. Counsel also stated "it would have been unethical . . . to imply and/or argue that [Moore] was unable [to] perform [the] acts" he was charged with. The court did not err in finding Moore failed to establish his newly discovered evidence claim.

## CONCLUSION

¶33      For the reasons above, this Court grants review but denies relief.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:      JR