IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

JUL 23 2013

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,          )
                               )
                   Respondent, )      2 CA-CR 2013-0120-PR
                               )      DEPARTMENT B
         v.                    )
                               )      O P I N I O N
VAUGHN MILES DENZ,             )
                               )
                   Petitioner. )
                               )
_____)


PETITION FOR REVIEW FROM THE SUPERIOR COURT OF YAVAPAI COUNTY

Cause No. P1300CR20090209

Honorable Tina R. Ainley, Judge

REVIEW GRANTED; RELIEF GRANTED

Sheila Sullivan Polk, Yavapai County Attorney
  By Steven J. Sisneros                                              Prescott
                                                     Attorneys for Respondent

David Goldberg                                            Fort Collins, Colorado
                                                          Attorney for Petitioner

E C K E R S T R O M, Judge.

¶1 Vaughn Denz petitions this court for review of the trial court's orders denying his petitions for post-conviction relief filed pursuant to Rule 32, Ariz. R. Crim. P. We will not disturb those rulings unless the court clearly has abused its discretion. *See State v. Swoopes*, 216 Ariz. 390, ¶ 4, 166 P.3d 945, 948 (App. 2007). We grant review and, because trial counsel performed deficiently by failing to make a reasoned decision to forgo consultation with an independent medical expert, and because that deficiency prejudiced Denz, we grant relief.

**Background**

¶2 Denz was convicted after a jury trial of child abuse and two counts of aggravated assault and sentenced to concurrent prison terms, the longest of which are eighteen years. We affirmed his convictions and sentences on appeal. *State v. Denz*, No. 1 CA-CR 09-0829 (memorandum decision filed Oct. 28, 2010). Denz's convictions stemmed from an incident in which his infant son sustained skull fractures, a torn frenulum, liver and spleen lacerations, and a bruised adrenal gland. Medical examination also revealed healing rib fractures. Denz claimed he had accidentally dropped the infant while changing his diaper and the infant had landed face-first onto a carpeted floor. Several medical experts testified, however, that the infant's injuries were inconsistent with Denz's explanation. A medical doctor further testified that the infant's abdominal injuries could only have resulted from intentional blows to his stomach.

¶3 Denz sought post-conviction relief, raising a claim of actual innocence and asserting that trial counsel had been ineffective in failing to present testimony by an independent medical expert and in failing to present character evidence "that would have

confirmed [Denz] was not violent with children but a patient and trusted caregiver." He further asserted counsel had been ineffective in failing to seek dismissal of "two of the three child abuse related charges as multiplicitous." In support of his claims, Denz provided an affidavit by a forensic pathologist stating he had reviewed the evidence and would have testified that the infant's liver and spleen lacerations were not consistent with a blow but instead were "consistent with deceleration injuries" from a fall; that "[o]ne or more of the skull abnormalities" might "not necessarily be fractures"; that a "bone fragility disorder" could not be excluded; and that "nothing about the imaging or critical findings . . . [wa]s specific for, or characteristic of," non-accidental injury. Denz additionally included unsworn letters from several individuals generally claiming he was unlikely to harm a child.

¶4        The trial court determined Denz's "claims related to the sufficiency of the evidence and multiplicity are precluded" and he had not presented a colorable claim that counsel had been ineffective "by failing to present character witnesses." It determined, however, that his claim regarding an independent medical expert was colorable and held an evidentiary hearing on that claim. After that hearing, the court denied Denz's petition for post-conviction relief, concluding that counsel had made a reasoned tactical decision not to consult with, or seek testimony from, an independent medical expert and that, in any event, counsel's conduct had not prejudiced Denz "in light of all the evidence presented and the fact that [Denz had] fled the State following the child's hospitalization."

3

**¶5**          After that ruling, Denz filed a successive petition for post-conviction relief, claiming *State v. Sosnowicz*, 229 Ariz. 90, 270 P.3d 917 (App. 2012), constituted a significant change in the law pursuant to Rule 32.1(g).  He argued *Sosnowicz* was retroactively applicable and would have prohibited the experts in his case from opining that "the child's injuries were 'non-accidental', 'intentional' and the result of 'child abuse.'"  The trial court summarily rejected that claim, concluding *Sosnowicz* was not a significant change in the law that would affect Denz's convictions.  Denz then filed petitions for review of the denial of his initial and successive petitions for post-conviction relief.  We granted his request to consolidate those petitions.

### Discussion

**¶6**          We first address Denz's argument that the trial court erred in rejecting his claim that counsel should have consulted with an independent medical professional about the infant's injuries.  To prevail on this claim, Denz was required to demonstrate that counsel's conduct fell below prevailing professional norms and that he was prejudiced thereby.  *Strickland v. Washington*, 466 U.S 668, 687-88 (1984).  Whether counsel rendered ineffective assistance is a mixed question of fact and law.  *See id.* at 698 ("[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.").  "[W]e defer to the trial court's factual findings but review de novo the ultimate legal conclusion."  *In re MH2010-002637*, 228 Ariz. 74, ¶ 13, 263 P.3d 82, 86 (App. 2011).

**¶7**          In addressing a claim of ineffective assistance of counsel, we must presume "counsel's conduct falls within the wide range of reasonable professional assistance" that

4

"'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, *quoting Michel v. Louisiana*, 350 U.S. 91, 101 (1955); *accord State v. Schurz*, 176 Ariz. 46, 58, 859 P.2d 156, 168 (1993). To overcome this presumption, Denz was required to show counsel's decisions were not tactical in nature, but were instead the result of "ineptitude, inexperience or lack of preparation." *State v. Goswick*, 142 Ariz. 582, 586, 691 P.2d 673, 677 (1984). Thus, disagreements about trial strategy will not support an ineffective assistance claim if "the challenged conduct has some reasoned basis," *State v. Gerlaugh*, 144 Ariz. 449, 455, 698 P.2d 694, 700 (1985), even if the tactics counsel adopts are unsuccessful. *See State v. Farni*, 112 Ariz. 132, 133, 539 P.2d 889, 890 (1975).

¶8        Denz argues that, based on the evidence presented, he "proved" counsel's "decision was incompetent," "unreasonable," and "prejudiced [Denz's] defense." At trial, counsel elicited testimony from the state's three medical experts that they could not state with certainty when the infant's injuries—except the torn frenulum—had occurred and that those injuries could have occurred days before the alleged incident and gone unnoticed. Counsel also secured testimony that the infant's torn frenulum could have resulted from a short fall and that the infant's other injuries could have resulted from previous accidents involving other family members. Counsel's closing included argument that, although the state had proven the child had been seriously injured, it had not demonstrated with any certainty when those injuries had occurred and thus had not demonstrated that Denz had caused them. He also suggested in closing—with only scant support from the trial evidence—that it was possible the infant's injuries had been accidental and could have resulted from a short fall.

5

¶9        At the post-conviction evidentiary hearing, trial counsel testified that, after he had interviewed three medical experts disclosed by the state, he concluded they could not offer more than "speculation as to what happened," consistent with his defense strategy that Denz "did not do it; that this was purely accidental." Counsel stated he had considered consulting with an independent medical expert but decided that was not a "strategy that [he] wanted to pursue," instead opting to use the state's experts' "testimony to bolster our own case." He stated that, based on the pretrial interviews, none of the three could "definitively tell [him] what the exact cause" of the infant's injuries had been, the time those injuries had occurred, or "who might have [caused] them." He further testified he feared a defense expert would "look[] like a hired gun" to the jury, and another expert's testimony could "re-emphasize again the mode of injury" to the infant, which might "sway the jury against [his] client." Counsel admitted, however, that had he obtained an expert opinion similar to the pathologist's, he would have presented that testimony.

¶10        The Yavapai County Public Defender testified that "[g]enerally speaking" it was not "competent practice" to "accept the State's expert's opinions without first having an evaluation by an independent expert." He acknowledged, however, that using the state's expert to introduce evidence favorable to the defense was a valid trial tactic. But he opined that it was not "prudent practice" to do so without first consulting with an independent expert unless, for example, the attorney was "also a practicing doctor who knows the circumstances" and that it would be a "heavy burden for an attorney to make that judgment call without having independent information to corroborate his

6

information." Trial counsel conceded he had no medical training or expertise, had limited experience with medical professionals, and could not independently assess whether the state's witnesses were competent. He also stated "this was the sole child-abuse case that [he had] ever tried" and he had not consulted with any other attorneys about the case. Moreover, he had no background or training to evaluate the state's written disclosure prior to conducting an interview with its experts.

¶11 Based on the foregoing, we cannot agree with the trial court's conclusion that counsel's failure to consult with an independent medical professional was a reasoned or informed strategic decision. Strategic decisions are "conscious, reasonably informed decision[s] made by an attorney with an eye to benefitting his client." *Pavel v. Hollins*, 261 F.3d 210, 218 (2d Cir. 2001). Thus, in general, the "decision not to hire experts falls within the realm of trial strategy." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993). Similarly, the decision whether to call a particular witness is normally a strategic decision to be made by counsel, *see State v. Mata*, 185 Ariz. 319, 335, 916 P.2d 1035, 1051 (1996), and avoiding a so-called "battle of the experts" may, in some cases, constitute sound trial strategy. *Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 790 (2011). The risk that additional expert testimony might distract the jury or unduly emphasize aspects of a case that counsel wishes to minimize may justify counsel's decision to forgo calling a particular witness. *See id.* (decision to not present expert evidence justified based on "possibility that expert testimony could shift attention to esoteric matters of forensic science . . . [or] distract the jury from whether [witness] was telling the truth"). Further, although counsel has a duty to engage in adequate

7

investigation of possible defenses, counsel may opt not to pursue a particular investigative path based on his or her reasoned conclusion that it would not yield useful information or is otherwise unnecessary in light of counsel's chosen trial strategy. *See Strickland*, 466 U.S. at 691 (reasonable strategic decision may render particular investigation unnecessary); *McClain v. Hall*, 552 F.3d 1245, 1253 (11th Cir. 2008) (counsel need not conduct further investigation if counsel could reasonably conclude it "would not yield valuable evidence").

¶12     However, the decision not to consult with an expert may qualify as sound trial strategy only if counsel had a reasoned basis justifying the decision. "A purportedly strategic decision is not objectively reasonable 'when the attorney has failed to investigate his options and make a reasonable choice between them.'" *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005), *quoting Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991); *see also Strickland*, 466 U.S. at 690-91 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). Absent sufficient information about an expert's potential testimony, or specialized knowledge and experience about the factual issues involved, counsel cannot reasonably evaluate whether an expert's opinion would be valuable or weigh the risks or benefits of calling an expert at trial.

¶13        As we noted above, Denz's trial counsel had no particular experience with medical testimony or with child abuse cases.[1]  Therefore, in the absence of any consultation with an independent medical expert, he lacked sufficient information to discern whether his chosen defense strategy—relying solely on the state's expert witnesses to support his theory of the case—was the most appropriate strategy in mounting Denz's defense.[2]  Moreover, Denz's trial counsel conceded that the pathologist's testimony would not have undermined his chosen trial strategy.  *Cf. Dugas v. Coplan*, 428 F.3d 317, 331 (1st Cir. 2005) ("'A tactical decision to pursue one defense does not excuse failure to present another defense that would bolster rather than detract from [the primary defense].'"), *quoting Foster v. Lockhart*, 9 F.3d 722, 726 (8th Cir. 1993) (alteration in *Foster*).

¶14        Trial counsel is not required to pursue all avenues of investigation and is permitted to "balance limited resources in accord with effective trial tactics and strategies." *Harrington*, ___ U.S. at ___, 131 S. Ct. at 789.  But that principle has no application here.  Nothing in the record suggests counsel lacked sufficient time to consult

---

[1]To the extent counsel's decision was based on his impression that the various medical experts appeared competent, he admitted he lacked the knowledge to evaluate their competence.  But there are circumstances where counsel's knowledge about a particular expert may justify a decision not to obtain an independent opinion. *See, e.g.*, *Lewis v. Alexander*, 11 F.3d 1349, 1351, 1353 (6th Cir. 1993) (counsel not ineffective in declining to seek another opinion regarding cause of death when counsel "had known [the testifying deputy coroner] professionally for a number of years, was aware of his excellent reputation, and had a high regard for his professional judgment").

[2]We do not suggest that counsel would be ineffective for failing to "'"shop" for a[n expert] who will testify in a particular way.'" *Card v. Dugger*, 911 F.2d 1494, 1513 (11th Cir. 1990), *quoting Elledge v. Dugger*, 823 F.2d 1439, 1447 n.17 (11th Cir. 1987).

with an independent medical expert, and the Yavapai County Public Defender, who also acted as the county's defense contract administrator, testified unequivocally that he would have granted a request for funds to retain such an expert. Indeed, trial counsel acknowledged that he could see "no downside" to consulting with an expert before trial.

¶15        Although the trial court relied on *Harrington* in denying Denz's claim, we find that case distinguishable for other reasons as well. First, its persuasive value must be evaluated in light of its procedural posture: the Supreme Court reviewed a decision by the Ninth Circuit Court of Appeals of a claim under 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Harrington*, ___ U.S. at ___, 131 S. Ct. at 783. That statute requires a defendant seeking habeas corpus relief from a federal court to demonstrate "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" and permits relief only when "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents." *Id.* at ___, 131 S. Ct. at 786-87. Thus, review under the AEDPA is highly deferential, *Harrington*, ___ U.S. at ___, 131 S. Ct. at 788, whereas we review de novo the trial court's ultimate conclusion here.

¶16        *Harrington* is also factually distinguishable. The defendant there claimed his attorney had been ineffective in failing to obtain forensic analysis of blood evidence found at the crime scene, and the defendant provided statements from various experts suggesting such an analysis might have corroborated his version of events. *Id.* at ___,

10

131 S. Ct. at 783. The Supreme Court observed that "[b]lood evidence d[id] not appear to have been part of the prosecution's planned case prior to trial" and that the state ultimately presented expert evidence regarding the blood spatters apparently only in response to defense counsel's opening statement, which "stressed deficiencies in the investigation, including the absence of forensic support for the prosecution's version of events." *Id.* at ___, 131 S. Ct. at 782. The Court determined, in part, that counsel had made a reasonable tactical decision to avoid emphasizing that blood evidence and making it a central issue in the case. *Id.* at ___, 131 S. Ct. at 790. Here, in contrast, it was apparent from the outset that the state would rely heavily on expert testimony in Denz's prosecution—effectively eliminating the strategic option of attempting to minimize that evidence.

¶17 We instead find *Dugas* more instructive here. There, the defendants had been charged with arson. *Dugas*, 428 F.3d at 319. Defense counsel interviewed the state's experts, who had concluded the fire was intentionally set, and determined those witnesses were credible and the physical evidence was consistent with their opinion. *Id.* at 320-21, 322-23. Counsel chose to present a theory that, even if the fire was arson, Dugas had not been the perpetrator. *Id.* at 323. But he nonetheless attempted to point out conflicts in the experts' opinions and pursue an alternate theory that the fire had not resulted from arson. *Id.* Counsel, however, did not consult with an independent expert, despite having no training in fire investigation and admitting he "did not understand the basic terminology or techniques of arson investigation." *Id.* His cross-examination of the expert witnesses was largely ineffective, and he "did not ask the kinds of questions

11

that a trained fire investigator or forensic scientist would consider important. Instead, his questions amounted to an unfocused set of miscellaneous criticisms and evinced his lack of scientific knowledge." *Id.* at 324.

¶18    On review, the First Circuit Court of Appeals concluded counsel had been ineffective because his investigation was unreasonable. *Id.* at 328-29. The court observed that "challenging the state's arson case was critical to Dugas's defense," and noted that his alternative defense—that there had been another perpetrator—was "difficult to mount and fraught with evidentiary problems." *Id.* at 329. The court further noted that counsel was aware that he did not fully understand the state's scientific evidence and lacked sufficient knowledge and experience to challenge it, but took no steps to rectify his lack of knowledge—despite recognizing that there were "problems with the state's arson case" he potentially could exploit if properly prepared. *Id.* at 330.

¶19    The parallels with this case before us are plain. The state's medical evidence was the cornerstone of its case against Denz: that the particular injuries the infant suffered could only have resulted from events inconsistent with Denz's version of events. Counsel here expressed a belief that he could, by cross-examining the state's experts, pursue an alternative defense that the infant's injuries had been accidental. But he acknowledged he had only limited experience with medical testimony and with child abuse cases in general. Rather than seeking the advice of an independent expert, counsel chose not to pursue any further investigation of the state's medical evidence. In sum, despite its strategic gloss, counsel's decision to not consult with an expert before settling

12

on a defense strategy cannot qualify as a reasoned decision; it therefore fell below prevailing professional norms.

¶20 We also disagree with the trial court's conclusion that Denz failed to demonstrate prejudice resulting from counsel's deficient performance. To demonstrate prejudice, Denz was required to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The court correctly noted Denz had fled after the infant was admitted to the hospital. And we agree with the court that the medical evidence painted a convincing picture of Denz's guilt. But, because the independent expert's testimony would have directly contradicted much of that medical evidence— specifically, the severity of the infant's injuries and their likely cause—counsel's deficient failure to secure such testimony undermines our confidence in the outcome. Indeed, a reasonable jury might have considered the pathologist's testimony standing alone as sufficient to raise a reasonable doubt about Denz's guilt. Because Denz has demonstrated that counsel's decision to not consult with an independent medical expert fell below prevailing professional norms and that counsel's deficient performance prejudiced him, he is entitled to a new trial. *See State v. Castaneda*, 150 Ariz. 382, 396, 724 P.2d 1, 15 (1986).

¶21 Because we grant relief on Denz's claim of ineffective assistance of counsel, we need not address his remaining arguments except his claim that the trial court erred in finding precluded his claim of actual innocence. We agree that claim is not

precluded, but nonetheless conclude the court did not err in rejecting it. *See State v. Haight-Gyuro*, 218 Ariz. 356, n.5, 186 P.3d 33, 37 n.5 (App. 2008) (reviewing court may affirm trial court if correct for any reason supported by record).

¶22　　　Although the trial court was correct that we addressed the sufficiency of the evidence on appeal, that is not the same as a claim of actual innocence raised pursuant to Rule 32.1(h), which is not typically subject to preclusion, *see* Ariz. R. Crim. P. 32.2(b), and requires a defendant to "demonstrate[] by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found [him] guilty of the underlying offense beyond a reasonable doubt." Ariz. R. Crim. P. 32.1(h). But the evidence Denz identified—the pathologist's report and various proposed character witnesses—does nothing more than contradict some of the evidence presented at trial. It does not conclusively demonstrate his innocence. Thus, the court's rejection of the claim was supported by the record. *See Haight-Gyuro*, 218 Ariz. 356, n.5, 186 P.3d at 37 n.5.

**Disposition**

¶23　　　For the reasons stated, we grant relief and remand the case to the trial court for a new trial.

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Judge

CONCURRING:
/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge
/s/ *Michael Miller*
MICHAEL MILLER, Judge

14