NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

JORDAN RIEPE, *Petitioner*.

No. 1 CA-CR 24-0135 PRPC
FILED 12-24-2024

Appeal from the Superior Court in Coconino County
No. CR2017-00891
The Honorable Fanny G. Steinlage, Judge *pro tempore*

**REVIEW GRANTED/RELIEF DENIED**

COUNSEL

Seth Apfel, Phoenix
By Apfel Law Group
*Counsel for Petitioner*

Ammon Barker and Jessica Armfield, Flagstaff
Coconino County Attorney's Office
*Counsel for Respondent*

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Jennifer B. Campbell and Judge Kent E. Cattani joined.

**M c M U R D I E**, Judge:

¶1            Jordan Riepe petitions this court to review the superior court's order denying his petition for post-conviction relief ("PCR"), filed under Arizona Rule of Criminal Procedure ("Rule") 32.1(a). We grant review but deny relief.

## FACTS AND PROCEDURAL BACKGROUND

¶2            The State charged Riepe with three counts of sexual assault. The victim, Amanda White,[1] testified that Riepe put his fingers into her vagina, followed by an object and his penis. A DNA analyst from the Arizona Department of Public Safety ("DPS") testified as an expert witness about DNA samples taken from a mark on White's neck, as well as her bra and underwear. The analysis performed by DPS on the DNA from the underwear and bra was inconclusive, meaning Riepe could not be ruled out as a contributor to the sample. But the analysis did rule out Riepe as a contributor to the DNA mixture found on White's neck. Defense counsel did not consult an independent DNA expert; instead, he only elected to cross-examine the DPS expert.

¶3            The State relied heavily on White's credibility and called several witnesses to bolster her character for truthfulness. Defense counsel's strategy was to focus on the inconsistencies in the evidence and White's statements. The defense also attacked White's credibility by aggressively cross-examining her and impeaching one of her character witnesses.

¶4            A jury found Riepe guilty on two of the three counts. Riepe appealed, and we affirmed his conviction and sentences. *State v. Riepe*, 1 CA-CR 19-0555, 2020 WL 5361972, at *6, ¶ 29 (Ariz. App. Sept. 8, 2020) (mem. decision). After the appeal, Riepe petitioned the superior court for PCR. He made several claims, including that he was denied effective

---

[1]        To protect the identity of the victim, we use a pseudonym.

assistance of trial counsel because his attorney did not hire an independent DNA consultant or use all the available impeachment evidence for the character witnesses.

**¶5**        The court held an evidentiary hearing on the PCR claims. At the hearing, Riepe called an expert witness who testified that his analysis excluded Riepe as a contributor from the underwear and bra samples. The expert witness also stated that male DNA was found on the victim's underwear and that White's then-boyfriend could not be excluded as the contributor. While the trial court had prohibited the parties from introducing evidence that White had sexual intercourse with her boyfriend under Arizona Revised Statutes ("A.R.S.") § 13-1421 (commonly known as the rape shield statute), Riepe still argued that defense counsel should have hired a DNA consultant to prove that White's boyfriend, and not Riepe, was the source of the DNA. The court denied the petition in an order detailing its findings of facts and conclusions of law on every issue Riepe presented. *See* Ariz. R. Crim. P. 32.13(d)(1).

**¶6**        Riepe petitions this court for review. We have jurisdiction under A.R.S. §§ 13-4031, -4239, and Criminal Rule 32.16.

**DISCUSSION**

**¶7**        We review the superior court's denial of a PCR petition for an abuse of discretion, *State v. Macias*, 249 Ariz. 335, 339, ¶ 8 (App. 2020), but review the interpretation of the Criminal Rules *de novo, State v. Mendoza*, 248 Ariz. 6, 14, ¶ 12 (App. 2019). On review, a defendant must show that the superior court abused its discretion by denying the PCR petition. *State v. Reed*, 252 Ariz. 236, 238, ¶ 6 (App. 2021). We review the court's legal conclusions *de novo. State v. Pandeli*, 242 Ariz. 175, 180, ¶ 4 (2017).

**¶8**        Riepe asserts that he received ineffective assistance of counsel ("IAC"). Riepe bases his IAC claim on two grounds: first, his defense counsel did not employ a DNA consultant to rebut the State's evidence, and second, that counsel failed to impeach the State's character witnesses or offer all available evidence to attack White's credibility.

**¶9**        To prove counsel was ineffective under the Sixth Amendment, a defendant must prove deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For deficient performance, a court must determine "whether counsel's representation 'fell below an objective standard of reasonableness.'" *Hinton v. Alabama*, 571 U.S. 263, 272 (2014) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)). The standard of reasonableness is linked to the "practice[s] and expectations of the legal

community," *id.* at 273 (quoting *Padilla*, 559 U.S. at 366), and examines "whether counsel's assistance was reasonable considering all the circumstances." *Id.* (quoting *Strickland*, 466 U.S. at 688).

**¶10** In resolving an IAC claim, a court must "indulge a strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance," and the defendant must overcome a presumption that the conduct could be a sound trial strategy. *Strickland*, 466 U.S. at 689. A court's analysis of counsel's strategy is "highly deferential," and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *State v. Bigger*, 251 Ariz. 402, 408, ¶ 11 (2021) (quoting *Strickland*, 466 U.S. at 689).

**¶11** Trial strategy and tactics are generally committed to counsel's judgment. *Bigger*, 251 Ariz. at 408, ¶ 12. Simply disagreeing with counsel's strategy will not support an IAC claim, *State v. Pandeli*, 242 Ariz. at 181, ¶ 8, but strategy decisions are not completely beyond the court's review. *Bigger*, 251 Ariz. at 408, ¶ 12. If there are multiple plausible lines of defense, counsel should ideally investigate each line before it decides which to rely on at trial. *Strickland*, 466 U.S. at 690-91. A strategic decision is objectively unreasonable when the attorney does not investigate their options and make a reasonable choice between them. *State v. Denz*, 232 Ariz. 441, 445, ¶ 12 (App. 2013).

**¶12** To prove prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Hinton*, 571 U.S. at 275 (quoting *Strickland*, 466 U.S. at 694). A reasonable probability is "sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

**¶13** Riepe failed to show his counsel's performance was deficient and therefore failed to establish a colorable IAC claim.

## A. Defense Counsel's Decision Not to Hire a DNA Expert Was Not Deficient.

**¶14** Riepe argues that because defense counsel lacked specialized knowledge in reviewing and interpreting raw DNA data, he could not rebut the DPS expert's testimony and thus should have hired an independent DNA consultant. On review, Riepe relies heavily on *State v. Denz*, 232 Ariz. 441 (App. 2013), which he asserts the superior court

overlooked. Riepe argues that such consultation would have led to information that contradicted the State's claims.

**¶15**       "Strategic decisions are conscious, reasonably informed decision[s] made by an attorney with an eye to benefitting his client." *Denz*, 232 Ariz. at 445, ¶ 11 (alteration in original) (quotation omitted). Hiring an expert and calling a particular witness are strategic decisions left to counsel. *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) (hiring experts); *State v. Mata*, 185 Ariz. 319, 335-36 (1996) (calling witnesses). In *Denz*, the court held that the defense counsel's decision not to consult an expert only constitutes a sound trial strategy if justified by a reasoned basis. 232 Ariz. at 445, ¶ 12. When the attorney does not investigate their options and make a reasonable choice between them, their strategic decision is objectively unreasonable. *Id.* Consultation with an expert is especially prudent when doing so would not undermine the counsel's chosen trial strategy. *See id.* at 445-46, ¶ 13.

**¶16**       Here, the superior court found that defense counsel's strategy did not fall below the standard of reasonableness and thus was not ineffective. Defense counsel argued at trial that White implied Riepe was the source of the mark on her neck, as she was adamant the mark was not there before the assault. The State's report found a combination of DNA from two people on White's neck, one of those being White herself. The DPS expert excluded Riepe as the other contributor. Defense counsel used Riepe's exclusion to attack White's credibility as she maintained he had caused the mark on her neck. Given these facts, the superior court could properly find counsel's strategy reasonable.

**¶17**       We note that defense counsel did consider retaining a DNA consultant and having the expert testify. At the PCR hearing, defense counsel testified that he ultimately chose not to retain a DNA consultant for several reasons, all consistent with the analysis required under *Denz*. First, defense counsel stated that he told Riepe that DNA experts were very expensive and time was limited. Although a secondary consideration, counsel believed that because a DNA consultant was unnecessary for the defense's strategy, there were better uses of Riepe's resources. *See Denz*, 232 Ariz. at 446, ¶ 14 ("Trial counsel is not required to pursue all avenues of investigation and is permitted to balance limited resources in accord with effective trial tactics and strategies.") (quotation omitted).

**¶18**       Next, defense counsel testified that hiring a DNA consultant might undermine his chosen trial strategy as it could have explained the inconsistent evidence he planned to argue. *Cf. Denz*, 232 Ariz. at 445-46, ¶¶ 11-13 (Trial counsel's failure to consult an independent expert was not

strategic in part because he conceded it would not have undermined his chosen trial strategy.). White admitted to police that she had sexual intercourse with her boyfriend the night before the assault, but the trial court excluded that information from the jury under the rape shield statute. *See* A.R.S. § 13-1421(A) (Evidence of a victim's prior sexual conduct may be admitted only if a judge finds the evidence is relevant and material to the fact at issue and not outweighed by its prejudicial nature.). Defense counsel worried that hiring an expert might contradict his strategy by proving that White's boyfriend was the source of the DNA samples from the neck, from which Riepe was excluded, thereby giving "an innocent explanation" to the inconsistency.

¶19 Finally, defense counsel testified that he chose not to hire a DNA consultant because he felt the State lacked conclusive DNA evidence and that attacking White's credibility was a stronger defense. In *Denz*, the victim, an infant, could not testify about the source of his injuries. *See Denz*, 232 Ariz. at 443, ¶ 2. The defendant claimed the injuries resulted from an accident. *Id.* Because the victim could not testify to the cause of injury, the State had to rely on medical expert testimony to prove the injuries had resulted from child abuse. *Id.* at 447, ¶ 19 (The medical evidence was the "cornerstone" of the State's case.).

¶20 But here, evidence other than the DNA samples weighed against Riepe. Riepe's counsel could pursue a strategy that the defense in *Denz* could not, minimizing the State's expert testimony and attacking the victim's credibility. *See Denz*, 232 Ariz. at 446, ¶ 16 (The strategic option of trying to minimize the State's expert testimony was "effectively eliminat[ed]."). Defense counsel did that by emphasizing the inconsistent evidence and attacking White's credibility. Because, in *Denz*, counsel had only one option to undercut the State's evidence, we find Riepe's counsel's actions distinguishable. Thus, Riepe failed to show that his counsel's strategic decision was objectively unreasonable.

**B.     Defense Counsel's Choice Not to Use Impeachment Evidence Did Not Prejudice Riepe.**

¶21 Riepe argues that defense counsel's performance was deficient because he did not impeach character witnesses the State called to bolster White's character for truthfulness. We resolve Riepe's claims here on the second prong of the *Strickland* test. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *State v. Bennett*, 213 Ariz. 562, 567, ¶ 21 (2006) ("Failure to

satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim."). Even if counsel's performance were ineffective in attacking the character witnesses, the question becomes whether there was a reasonable probability that, but for counsel's supposed errors, the result would have been different. *See State v. Salazar*, 146 Ariz. 540, 542 (1985).

**¶22**        Reviewing the totality of the evidence before the jury, we conclude that the potential value of the added impeachment evidence against the character witnesses and White would not have affected the outcome. *See Malone v. Clarke*, 536 F.3d 54, 67 (1st Cir. 2008) (A defense counsel's failure to call a witness to impeach the victim's testimony did not prejudice the defendant when the defense impeached the victim by other means and calling the witness may have hurt the defense's case.); *Quintanilla v. Marchilli*, 86 F.4th 1, 27 (1st Cir. 2023) (No prejudice resulted from the defense's failure to present more impeachment evidence by un-interviewed witnesses.). Defense counsel had impeached and attacked White's credibility and cross-examined and impeached the character witnesses. We find no reasonable probability for a different result based on eliciting more impeachment testimony. Thus, the superior court did not abuse its discretion by concluding that Riepe failed to show that counsel's failure to offer more impeachment evidence constituted IAC.

## CONCLUSION

**¶23**        We grant review but deny relief.



AMY M. WOOD • Clerk of the Court
FILED:        JR