NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

PRINCESS MARGO GILMORE, *Petitioner*.

No. 1 CA-CR 25-0196 PRPC

FILED03-05-2026

Petition for Review from the Superior Court in Maricopa County
No.  CR2017-001211-001
The Honorable Timothy J. Ryan, Judge *Retired*

**REVIEW GRANTED; VACATED AND REMANDED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Philip D. Garrow, Douglas Gerlach
*Counsel for Respondent*

Princess Margo Gilmore, Phoenix
*Petitioner*

---

**MEMORANDUM DECISION**

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge Cynthia J. Bailey and Judge D. Steven Williams joined.

---

**K I L E Y**, Judge:

**¶1** Petitioner Princess Margo Gilmore seeks review of the superior court's order summarily dismissing her petition for post-conviction relief ("PCR") filed under Arizona Rule of Criminal Procedure ("Rule") 32. We have considered the petition for review and, for the reasons stated, grant review and remand for further proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2** While driving westbound on West Indian School Road in Goodyear late one afternoon in July 2016, Gilmore entered the intersection at North Litchfield Road against a red light. Her car collided with a pickup truck, killing one of its two occupants. Gilmore was charged with manslaughter and endangerment. *See* A.R.S. §§ 13-1103(A), -1201(A).

**¶3** At trial, the State maintained that Gilmore failed to stop for the red light because she was impaired by recent marijuana use. Gilmore denied that she was impaired, insisting that the collision was "an accident" rather than "a crime." When defense counsel asked the investigating officer, Goodyear Police Officer Guilbault, whether "glare" from the setting sun could "possibly" have contributed to the collision, the officer answered, "No." When asked to elaborate, Officer Guilbault testified that the setting sun could not have interfered with Gilmore's ability to see the red traffic light as she approached Litchfield Road because, given "the angle of the intersection," the sun would have been shielded from her view "behind the buildings" along the side of the street.

**¶4** Gilmore's accident reconstructionist, Brett O'Toole, testified about his analysis of the collision. He stated, among other things, that he reviewed a security video obtained from a nearby business and was able to determine that the setting sun was "pretty much exactly westward" at "about 12 degrees up from the horizon," and therefore sunlight would have been "in the eyes" of "a driver driving westward."

2

¶5        O'Toole further testified that he had intended to "conduct[] a scene inspection in July when the sun was at its approximate same position as it was when the collision occurred." He never conducted the inspection, however, because he "had used up all [the] hours" of work that had been "approve[d]." He "needed to get more hours" approved, he said, before he could "go out to the scene and perform that work." Because he "didn't get" approval for the additional hours, he stated, he "didn't do that inspection."

¶6        Jurors submitted several questions that were asked of O'Toole on the issue of sun glare, including the following:

> Regarding the possibility of sun in west bound [*sic*] driver's eyes, the Goodyear police stated there were buildings to the side of the road that were blocking the sun in the westbound traffic lanes, did your analysis take into account the location/height of the buildings to determine the potential for shading?

> Based on your knowledge and information available, would the glare on the [business's] video be visible due to the location of the camera, and not be the same for [Gilmore]?

> When calculating the glare from the sun, did you also take into account the buildings that would have been in the area and whether they would or would not have been a factor for [Gilmore]?

¶7        In response to these questions, O'Toole conceded that "it's possible" that glare would not have impaired a westbound driver's view of the intersection "if there were tall enough buildings . . . that could block the sunlight[.]" He would have investigated that possibility, he stated, if he "would have gone to look at the scene."

¶8        In closing argument, the State argued that the evidence showed that Gilmore was impaired by marijuana use, and denied that Gilmore's view of the intersection would have been impeded by glare from the setting sun. The State argued,

> [I]f not THC, then what caused this crash? If it wasn't marijuana, then how did the crash occur? Sun glare? No.

Referring to the evidence showing how long Gilmore had been traveling west on Indian School Road before reaching the Litchfield Road

intersection, the State posed the rhetorical question, "If the sun was such a factor, why didn't [Gilmore] crash earlier? That doesn't make sense."

¶9        The jury convicted Gilmore of negligent homicide as a lesser-included offense of manslaughter, *see* A.R.S. § 13-1102(A), and acquitted her of endangerment. The superior court sentenced her to six and a half years of imprisonment. We affirmed her conviction and sentence on appeal. *State v. Gilmore*, 1 CA-CR 20-0491, 2021 WL 3508535 (Ariz. App. Aug. 10, 2021) (mem. decision).

¶10        Gilmore filed a PCR petition asserting a claim of ineffective assistance of counsel ("IAC"). Her trial counsel was ineffective, she asserted, because he failed to gather and present evidence showing that when she ran the red light "she did, in fact, have sunlight in her eyes[,] rendering it difficult for her to see." Trial counsel "knew" from the outset of the case that "glare was going to be an issue[,]" she said, and so he should have "secure[d]" funding for his accident reconstruction expert to "go to the scene[.]" Because trial counsel did not secure funding for a scene investigation, Gilmore asserted, O'Toole was unable to refute Officer Guilbault's testimony that glare "could not have been a factor" in causing the collision because the setting sun would have been concealed from Gilmore's view "behind [a] building" as she approached the red light.

¶11        To support her IAC claim, Gilmore presented an affidavit from O'Toole stating that he asked trial counsel to secure additional funding so that he could "conduct [a] site inspection" to determine "how nearby buildings may have affected the sun glare[.]" Because counsel did not do so, O'Toole stated, he "was unable to perform an accurate evaluation" before trial "of the sun's effect on [Gilmore's] vision" at the time of the collision. Gilmore also submitted the affidavit of a private investigator, Ralph McLaughlin, stating that he conducted two scene inspections in which he traveled west on Indian School Road at the same time of day that the collision occurred and found, both times, that his "visibility was affected by glare due to the positioning of the [s]un[.]"

¶12        Noting that a conviction for negligent homicide requires evidence of "a gross deviation from the standard of care[,]" Gilmore asserted that "running a red light due to sunlight glare" is insufficient to make such a showing. Evidence of "how bad the glare was," she maintained, might, therefore, have resulted in a different verdict. She acknowledged that an attorney is not ineffective merely because his or her trial strategy proves unsuccessful, but asserted that her trial counsel's

"[f]ail[ure] to secure payment for expert investigation [of] a known issue" was not "sound trial strategy," but "simply a lack of preparation[.]"

**¶13**      The superior court summarily dismissed Gilmore's PCR petition, finding that she failed to state a colorable IAC claim. Gilmore's counsel cannot be faulted for failing to present expert testimony, the court held, because "the proposed testimony is about a subject[,]" *i.e.*, sun glare, "that does not require an expert."

**¶14**      Gilmore petitioned for review of the superior court's ruling. We grant review under Article 6, Section 9 of the Arizona Constitution, A.R.S. § 13-4239(C), and Rule 32.16.

## DISCUSSION

**¶15**      Gilmore asserts that the superior court erred in summarily dismissing her PCR petition, asserting that she is entitled to an evidentiary hearing on her IAC claim. We review the superior court's summary dismissal of a PCR petition for an abuse of discretion. *State v. Bigger*, 251 Ariz. 402, 407, ¶ 6 (2021). An abuse of discretion occurs "if the PCR court makes an error of law or fails to adequately investigate the facts necessary to support its decision." *State v. Pandeli*, 242 Ariz. 175, 180, ¶ 4 (2017) (citation omitted).

**¶16**      To prevail on an IAC claim, a petitioner must "demonstrate that counsel's conduct fell below an objective standard of reasonableness and that he was prejudiced thereby." *Bigger*, 251 Ariz. at 407, ¶ 8 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). Under the first prong of the *Strickland* test, "we must presume 'counsel's conduct falls within the wide range of reasonable professional assistance' that 'might be considered sound trial strategy.'" *State v. Denz*, 232 Ariz. 441, 444, ¶ 7 (App. 2013) (quoting *Strickland*, 466 U.S. at 689). To overcome the presumption, a defendant must show "counsel's decisions were not tactical in nature, but instead were the result of 'ineptitude, inexperience or lack of preparation.'" *Id.* (citation omitted). To establish the second prong of the *Strickland* test, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Miller*, 251 Ariz. 99, 104, ¶ 17 (2021) (quoting *Strickland*, 466 U.S. at 694). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *State v. Anderson*, 257 Ariz. 226, 234, ¶ 33 (2024) (citations omitted).

**¶17**      A superior court must summarily dismiss a PCR petition that does not raise a colorable claim. Ariz. R. Crim. P. 32.11(a). A petitioner is

entitled to an evidentiary hearing, however, if he states a colorable claim, *i.e.*, if "he has alleged facts which, if true, would probably have changed the verdict or sentence." *State v. Amaral*, 239 Ariz. 217, 220, ¶ 11 (2016). (emphasis omitted). "When doubts exist, a hearing should be held to allow the defendant to raise the relevant issues, to resolve the matter, and to make a record for review." *Anderson*, 257 Ariz. at 234, ¶ 34 (citation modified).

**¶18**        Gilmore asserts that her counsel's failure to secure funds for O'Toole to conduct a scene inspection constituted deficient performance that prejudiced her defense. In response, the State argues, first, that the trial court correctly concluded that whether "sun glare can affect an automobile driver's ability to recognize a red light . . . is not a subject that requires expert testimony."

**¶19**        The superior court was correct in noting that expert testimony is not required to establish that glare from the sun can interfere with a person's ability to see. *See In re Ubaldo B.*, 206 Ariz. 543, 547, ¶ 14 (App. 2003) (noting that expert testimony is not admissible on matters of common knowledge). But Gilmore's IAC claim is not based on counsel's failure to present the testimony of an expert. Instead, the crux of Gilmore's IAC claim is that counsel should have arranged for a witness to conduct a scene inspection to be able to offer testimony, based on personal knowledge, about the position of the setting sun under conditions similar to those found at the intersection of Indian School Road and Litchfield Road at the time of the collision.

**¶20**        Of course, trial counsel is not required to "pursue all avenues of investigation," and counsel may reasonably decide "not to pursue a particular investigative path based on his or her reasoned conclusion that it . . . is . . . unnecessary in light of counsel's chosen trial strategy." *Denz*, 232 Ariz. at 445, ¶ 11. Similarly, decisions about what witnesses to call are generally considered matters of trial strategy that are generally entrusted to the judgment of counsel. *State v. Lee*, 142 Ariz. 210, 215 (1984) ("[T]he power to decide questions of trial strategy and tactics rests with counsel, and the decision as to what witnesses to call is a tactical, strategic decision." (citations omitted)). But "[a] purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his [or her] options and make a reasonable choice between them." *Denz*, 232 Ariz. at 445, ¶ 12. Here, the record discloses no reasoned basis for counsel to fail to arrange for O'Toole to conduct a scene inspection to gather evidence about the sun glare issue.

¶21    The State asserts, next, that Gilmore cannot establish prejudice from counsel's failure to arrange for O'Toole to conduct a scene investigation because "the trial record includes evidence of the existence of sun glare at or near the time of the fatal crash," including "a video recording that allowed the jury to see the presence of sun glare around the time that Gilmore drove through the red light." Accordingly, the State maintains, O'Toole's testimony describing his observations of sun glare at the scene would have been "cumulative" to other evidence, and "cumulative evidence . . . does not support a claim for ineffective assistance."

¶22    Evidence is cumulative if it "supports a fact otherwise established by existing evidence." *State v. Romero*, 240 Ariz. 503, 510, ¶ 17 (App. 2016) (citation modified). Evidence is not cumulative, however, merely because it is "corroborated by other evidence." *Id.* Further, evidence on "the very issue in dispute" is never cumulative. *Id.* Here, the State denied that sun glare was a factor in the collision. Officer Guilbault expressly testified that the setting sun would not have prevented Gilmore from seeing the red light because the sun would have been blocked from her view by nearby buildings. The State argued to the jurors that the contention that sun glare impeded Gilmore's vision "doesn't make sense." Far from being "cumulative," evidence that a westbound driver like Gilmore would have experienced glare from the setting sun would have been directly relevant to the critical issue in dispute, *i.e.*, the reason why Gilmore ran the red light. *See State v. Bass*, 198 Ariz. 571, 581, ¶ 40 (2000) (recognizing that evidence of a fact is not considered cumulative "where . . . it is the very issue in dispute").

¶23    Counsel's failure to arrange for O'Toole to conduct a scene inspection left the defense unable to rebut Officer Guilbault's testimony that the setting sun would not have impeded Gilmore's ability to see the traffic light. The record does not reflect any reasoned basis for counsel's failure to arrange for a scene inspection. *See Bigger*, 251 Ariz. at 408, ¶ 11 ("When evaluating the reasonableness of counsel's strategic decisions, the foundational inquiry is the rationale for the decision."). The jurors' questions show that they were concerned about the sun glare issue. Gilmore's PCR petition thus presented a colorable IAC claim by showing a reasonable probability that, but for counsel's failure to arrange for a scene inspection, the result would have been different. *See Anderson*, 257 Ariz. at 234, ¶ 33. Because the present record affords no basis on which to conclude that trial counsel made reasoned decision not to arrange for a witness to conduct a scene inspection, an evidentiary hearing should have been conducted to resolve that question. *See id.* at ¶¶ 34-35; Ariz. R. Crim. P.

32.13(a) ("The defendant is entitled to a hearing to determine issues of material fact[.]").

**¶24** Gilmore raises other claims on appeal as well, including that the trial judge improperly failed to provide a substantive response to a juror question, that the judge erred in failing to instruct on a lesser-included offense, and that a recent change in the law entitles her to relief. Because she never raised these alternative claims in her PCR petition, she cannot raise them for the first time before this Court. *State v. Andersen*, 177 Ariz. 381, 385 (App. 1993).

## CONCLUSION

**¶25** We vacate the superior court's order summarily dismissing Gilmore's PCR petition and remand for an evidentiary hearing.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED:** JR

8